2021 IL App (1st) 200669

No. 1-20-0669

Fourth Division
March 31, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| MIDWEST MAILING & SHIPPING SYSTEMS, INC., a Wisconsin Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | |
|  | ) | No. 17 L 002513 |
| SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC, an Illinois Limited Liability Company; ROBERT C. GOLDBERG; and LEONARD J. GAMBINO, | ) ) ) ) | The Honorable Daniel J. Kubasiak, Judge Presiding. |
| Defendants and Third-Party Plaintiffs-Appellants | ) ) | |
| (Ryan Rappa, Eli Kay-Oliphant, and Massey & Gail, LLP, Third-Party Defendants-Appellees). | ) ) ) ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Midwest Mailing & Shipping Systems, Inc. (Midwest), filed a lawsuit against defendants, the law firm of Schoenberg, Finkel, Newman & Rosenberg, LLC, and attorneys Robert C. Goldberg and Leonard J. Gambino (collectively, SFNR), alleging that certain negligent legal advice given by SFNR caused injury to Midwest's business dealings and caused Midwest to incur certain expenses as a result of SFNR's negligence. In turn, SFNR filed a

third-party complaint for contribution against the law firm of Massey & Gail, LLP, and attorney Eli Kay-Oliphant (collectively, M&G), as well as against attorney Ryan Rappa, the son of Midwest's owners, alleging that the third-party defendants had contributed to any injury sustained by Midwest.[1] The trial court dismissed the third-party claims against M&G, finding that SFNR had failed to allege that the injury caused by M&G was the same injury caused by SFNR. Additionally, the trial court dismissed the third-party claims against Rappa, finding that it lacked personal jurisdiction over him. SFNR appeals, and for the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        As noted, the instant appeal concerns only the dismissal of SFNR's third-party complaint for contribution. However, since the dismissal was based on the trial court's finding that the "injury" alleged in the third-party complaint was not the same "injury" as alleged in the original complaint, we relate the allegations of both complaints.[2]

¶ 4                                 I. Midwest's Complaint

¶ 5        On March 9, 2017, Midwest filed a legal malpractice complaint against SFNR. In its complaint, Midwest alleged that it is a Wisconsin corporation, doing business in Illinois and with a principal place of business in Bloomington, Illinois, and is engaged in the business of selling, leasing, installing, and servicing postage meters. In 1996, Midwest and F.M.E. Corporation, doing business as Neopost, entered into a dealership agreement, which provided that Midwest would be Neopost's exclusive dealer to sell, lease, install, and service certain of

---

[1]Third-party defendant Kay-Oliphant represented Midwest and Rappa below and is representing Rappa on appeal.
[2]We note that certain documents have been filed with this court under seal. Accordingly, we relate only those facts necessary for resolution of the issues on appeal.

its products, including postal meters and registers, in certain geographic territories. Midwest retained SFNR, in part, to represent it in disputes Midwest had with Neopost concerning the dealership agreement over the years. Specifically, in 2002, SFNR represented Midwest in litigation alleging that Neopost was in breach of the dealership agreement, which was resolved pursuant to a settlement agreement in 2004.

¶ 6    In 2015, Midwest retained SFNR to prepare a lawsuit against Neopost once again, due to Neopost's alleged breaches of the dealership agreement and the 2004 settlement agreement. At approximately the same time, SFNR was also providing Midwest with legal advice regarding a potential corporate reorganization. Specifically, SFNR advised Midwest to incorporate a new entity in Illinois, assign Midwest's business to the new Illinois entity, and terminate Midwest's incorporation in Wisconsin. However, the dealership agreement provided that Neopost could terminate the dealership agreement in the event that Midwest made an unauthorized assignment of its rights under the dealership agreement or in the event that Midwest abandoned its business. Midwest alleged that the dealership agreement was the basis for Midwest's ability to sell Neopost products, which accounted for the vast majority of Midwest's business and, as such, termination of the dealership agreement would "devastate and potentially destroy" Midwest's business.

¶ 7    Midwest asked SFNR if the corporate reorganization would negatively impact its position in its litigation against Neopost. SFNR advised that the reorganization would not have an adverse impact. Midwest then agreed to move forward with the reorganization. On August 14, 2015, SFNR filed a request with the Illinois Secretary of State, asking it to withdraw Midwest's authorization to do business in the state of Illinois, and formed a new Illinois corporation with the same legal name. On August 21, 2015, SFNR filed a complaint on behalf of Midwest

against Neopost. On August 25, 2015, Midwest assigned all of its rights and obligations under the dealership agreement to the new Illinois corporation. Finally, on September 14, 2015, SFNR filed Midwest's dissolution with the Wisconsin Department of Financial Institutions.

¶ 8        On September 21, 2015, Neopost sent Midwest a termination notice, informing Midwest that Neopost sought to terminate the dealership agreement based on Midwest's reorganization. The termination notice provided that Neopost had the right to terminate the dealership agreement when Midwest abandoned its right to do business in Illinois and assigned its rights and obligations under the dealership agreement to the new corporation. On September 24, 2015, Neopost filed a declaratory judgment lawsuit against Midwest in the United States District Court for the Southern District of New York, seeking a declaration that Neopost could properly terminate the dealership agreement as a result of Midwest's failure to obtain their approval.

¶ 9        On September 25, 2015, four days after the sending of the termination notice and one day after the filing of Neopost's lawsuit, SFNR filed a revocation of voluntary dissolution of Midwest with the Wisconsin Department of Financial Institutions. On October 12, 2015, SFNR filed an application to the Illinois Secretary of State for Midwest to be reinstated as a foreign corporation with the authority to do business in Illinois. Finally, on October 20, 2015, the new corporation assigned all of its rights and obligations under the dealership agreement back to Midwest, with the assignment being made effective as of August 25, 2015.

¶ 10        Midwest alleged that Neopost's lawsuit "threatened to destroy" Midwest's business and that, soon after Midwest realized that SFNR's advice was the basis for the termination notice and the lawsuit, Midwest's relationship with SFNR became adversarial. Midwest alleged that SFNR "began pressuring" Midwest to settle its disputes with Neopost in order to protect SFNR

from liability, rather than acting in Midwest's best interests, and Midwest sought and retained new counsel. Midwest and Neopost subsequently resolved their differences and settled the case, with each party dismissing its lawsuit against the other—Midwest dismissed its Illinois lawsuit, while Neopost dismissed its New York lawsuit. Midwest alleged that, but for SFNR's advice, Midwest "would not have had to compromise its contractual rights and claims" and would not have incurred substantial attorney fees in responding to the New York litigation.

¶ 11     In its answer, SFNR denied the material allegations of Midwest's complaint. SFNR admitted that, in 2015, Midwest sought legal advice from SFNR, as well as from other counsel, regarding Midwest's desire to become an Illinois corporation in light of recent changes to Illinois law that required certain vendors under certain circumstances to be domestic entities organized under Illinois law. SFNR alleged that it advised Midwest as to multiple procedures that Midwest could employ, including the procedure that Midwest ultimately pursued—incorporating a new corporation in Illinois, assigning Midwest's business to the new corporation, and dissolving Midwest's incorporation in Wisconsin.

¶ 12                        II. SFNR's Third-Party Complaint

¶ 13     On May 23, 2017, SFNR filed a motion for leave to file a third-party complaint for contribution, which was granted on May 31, 2017. SFNR subsequently filed a third-party complaint on August 24, 2017, which was amended several times as a result of multiple motions to dismiss by the third-party defendants. The third-party complaint at issue on appeal is SFNR's second amended third-party complaint, filed on June 20, 2019.

¶ 14     In the third-party complaint, SFNR alleged that third-party defendant Rappa, who is the son of Midwest's owners, is an attorney licensed to practice law in New York and in the District of Columbia and "is the outside general counsel to Midwest"; SFNR alleged that Rappa is a

5

resident of Arlington County, Virginia. SFNR alleged that personal jurisdiction was proper over Rappa because (1) he committed a tortious act within the state of Illinois, giving rise to specific jurisdiction, and (2) he had engaged in continuous and systematic activity within the state of Illinois in his role as outside general counsel to Midwest, which is headquartered in Illinois, and which gave rise to general jurisdiction.

¶ 15    SFNR alleged that Midwest was a participant in the state of Illinois' small business set-aside program (30 ILCS 500/45-45 (West 2014)), which designated certain types of contracts for which only small businesses can compete. Prior to August 2015, the requirements for the program were amended to require that the small businesses participating in the program be organized under the laws of the state of Illinois. In 2015, when Midwest sought to renew its participation in the program, it was informed that it could not do so because it was organized under the laws of the state of Wisconsin. Midwest thus sought to reorganize as an Illinois entity and asked SFNR how to accomplish that goal.

¶ 16    As the reorganization process was underway, Midwest and SFNR were also in the process of preparing to file a lawsuit against Neopost for claimed breaches of the dealership agreement. SFNR prepared a draft of the complaint and sent it to David Rappa,[3] one of Midwest's owners, for his review and approval. SFNR alleged that "[o]n July 20[,] 2015, David [Rappa] forwarded the draft complaint via electronic mail to [third-party defendant Rappa] for his review, and on July 21[,] 2015[,] [third-party defendant Rappa] responded to David [Rappa] via electronic mail," after which the complaint was filed on August 21, 2015.

---

[3]David Rappa's full name is Vincent David Rappa, according to affidavits included in the record on appeal.

¶ 17        On September 21, 2015, Neopost sent a letter to Midwest, notifying Midwest of Neopost's intent to terminate the dealership agreement based on Midwest's reorganization, and on September 24, 2015, Neopost filed a complaint for declaratory judgment in the United States District Court for the Southern District of New York. SFNR thereafter "unwound" the reorganization and did so within 90 days. The parties attempted to negotiate a settlement of their disputes, both informally and through a formal mediation in November 2015. During this period, and continuing through April 14, 2016, Midwest and Neopost continued to operate as though the dealership agreement was in full force and effect. The negotiations were unsuccessful, and, in December 2015, Midwest terminated SFNR as its legal counsel.

¶ 18        SFNR alleged that Midwest, with Rappa's assistance, ultimately retained M&G to represent it with respect to the Illinois and New York lawsuits. While settlement discussions remained ongoing, M&G prepared a motion to dismiss Neopost's New York lawsuit, which was sent, in draft form, "to Midwest and [Rappa]" for their review and approval. After "Midwest and [Rappa]" responded, the motion to dismiss was filed on January 27, 2016. SFNR alleged that "[t]he motion to dismiss and memorandum [in support thereof] contended in only a cursory manner that Neopost's complaint in the New York action failed to state a cause of action and was otherwise without factual or legal support." The motion to dismiss was denied on February 2, 2016, "without having required Neopost to even file a response brief." M&G then prepared an answer and counterclaims in the New York litigation, which were sent "to Midwest and [Rappa]" for approval before filing.

¶ 19        SFNR alleged that Midwest's counterclaims, filed February 16, 2016, "set forth valid and viable claims to defeat Neopost's complaint for declaratory judgment." Specifically, the counterclaims alleged that the dealership agreement contained a 90-day right-to-cure provision

and that Midwest cured any violations of the dealership agreement when it "unwound" the reorganization within 90 days. The counterclaims also alleged that, when Midwest "unwound" the transaction, it was as though it had never occurred, meaning that there was no breach of the dealership agreement. Finally, the counterclaims alleged that Midwest did not abandon its business because it continued to operate under the exact same conditions as it had operated before the reorganization. SFNR alleged that Neopost filed a motion to dismiss Midwest's counterclaims, which was denied, and Neopost filed its answer to Midwest's counterclaims on March 23, 2016.

¶ 20        SFNR alleged that, "[i]nexplicably," three weeks later, Midwest and Neopost entered into a settlement agreement whereby (1) Neopost agreed to pay a certain sum to Midwest, (2) Midwest agreed to relinquish its territorial exclusivity right, and (3) Midwest and Neopost agreed to the dismissal of the Illinois and New York lawsuits with prejudice. SFNR alleged that "Midwest agreed to these terms without having engaged in any discovery or otherwise attempting to perfect the valid and viable claims it possessed that, if perfected, would have defeated Neopost's claims as set forth in the New York action."

¶ 21        SFNR alleged that Midwest agreed to the terms in the settlement agreement on the advice of M&G. SFNR further alleged that Midwest also agreed to the terms on the advice of Rappa. SFNR alleged that, while M&G had filed an appearance in the New York litigation and Rappa had not, Rappa "was nonetheless intimately involved in providing legal advice and counsel to Midwest with respect to Midwest's litigation with Neopost." As an example, SFNR pointed to a number of e-mail communications between Rappa, M&G, and Midwest's owners (Rappa's parents), bearing subject lines such as " 'Neopost-Midwest-terms of settlement,' " " 'Midwest

Mailing v. Neopost—New Settlement Terms Mark-Up,' " and " 'Draft SDNY Answer and Counterclaims.' "

¶ 22     SFNR's third-party complaint contained three counts for contribution: one against Rappa, one against third-party defendant Kay-Oliphant, and one based on vicarious liability against M&G. The counts against Rappa and Kay-Oliphant were substantively identical, except that the count against Rappa included a claim that he was engaged in the unauthorized practice of law because he was not licensed to practice law in Illinois. SFNR alleged that there was an attorney-client relationship between Midwest and the third-party defendants. SFNR further alleged that Midwest's claims against Neopost in the Illinois litigation, and its counterclaims against Neopost in the New York litigation, were "valid and viable when they were presented" to the third-party defendants. SFNR alleged that the third-party defendants breached their duties to Midwest by (1) failing to properly advise Midwest as to the strength of its claims in the Illinois and New York lawsuits, (2) failing to properly advise Midwest to take all reasonable steps to perfect its claims in the Illinois and New York lawsuits, including by taking discovery, and (3) advising Midwest to settle without first having engaged in discovery or undertaking any other action to perfect its claims against Neopost. SFNR alleged that, but for these breaches, "Midwest could and would have perfected its valid and viable claims and counterclaims against Neopost, Midwest's claims against Neopost in the Illinois action would have succeeded, Neopost's complaint against Midwest in the New York action would have been defeated, Midwest's counterclaims against Neopost in the New York action would have succeeded, and Midwest would not have relinquished its Territorial Exclusivity Right." SFNR further alleged:

"The injury caused by [the third-party defendants'] breach of the standard of care [they] owed to Midwest, as aforesaid, is the same injury purportedly caused by SFNR's breach of the standard of care owed to Midwest, to wit:

a. Midwest alleges that it had the benefit of its Territorial Exclusivity Right [citation], but that it relinquished its Territorial Exclusivity Right due to SFNR's advice and counsel [citation].

b. SFNR alleges that Midwest had the benefit of its Territorial Exclusivity Right [citation], but that Midwest relinquished its Territorial Exclusivity Right due to [the third-party defendants'] advice and counsel [citation]."

¶ 23                    III. Motions to Dismiss SFNR's Third-Party Complaint

¶ 24        On July 12, 2019, M&G filed a motion to dismiss SFNR's third-party complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). M&G claimed that SFNR had failed to adequately plead facts establishing that M&G's alleged negligence caused the same injury as Midwest's alleged negligence, as required to state a claim for contribution. M&G further claimed that SFNR had failed to adequately plead facts that stated a claim for legal malpractice.

¶ 25        Also, on July 12, 2019, Rappa filed a motion to dismiss SFNR's third-party complaint pursuant to section 2-301 of the Code (735 ILCS 5/2-301 (West 2018)), contending that the court lacked personal jurisdiction over him. Attached to Rappa's motion to dismiss was the declaration of third-party defendant Kay-Oliphant, which, in turn, attached several exhibits concerning the issue of jurisdiction.

¶ 26        First, in an affidavit, Rappa averred that he was an attorney and, since 2012, had practiced law in New York and Washington, D.C. Rappa further averred that he was a resident of

10

Virginia and had not lived in Illinois since 2011. Rappa averred that he did not have an Illinois law license, had never practiced law in Illinois, had never advertised any legal services in Illinois, and had never traveled to Illinois for business. Rappa averred that Colleen Rappa and Vincent David Rappa (Midwest's owners) were his parents and that, from time to time, his father consulted him regarding various aspects of the family business, including asking him legal questions after he completed law school. However, Rappa averred that Midwest never retained him in any capacity or paid him for any legal advice.

¶ 27    Rappa averred that the first time he learned that SFNR had created a new corporation and dissolved the old corporation was on September 22, 2015, and he was not consulted on any aspect of the reorganization by anyone, nor did he review any of the documents that were filed by SFNR. In fact, Rappa averred that between August 6, 2015, and September 14, 2015, he hardly communicated with his parents on any subject—as he was out of the country between August 22, 2015, and August 29, 2015—and spoke with his parents only twice between August 6, 2015, and September 14, 2015—once on August 9 for his father's birthday and once on September 13. Rappa averred that they did not discuss the reorganization during those calls. Rappa also averred that he e-mailed fewer than 30 times with his parents during that time period and that the e-mails concerned subjects unrelated to the reorganization. Rappa averred that "[i]t was only after the Re-domiciliation, when Neopost sent a letter purporting to terminate Midwest Mailing's Dealer Agreement, that my father communicated with me regarding the Re-domiciliation. Only then did my father began [*sic*] consulting me regarding fixing the harm caused by Defendants' negligence."

¶ 28    Also attached to Kay-Oliphant's declaration was the affidavit of Vincent David Rappa, third-party defendant Rappa's father, who averred that, from time to time, he consulted with

11

his son regarding aspects of Midwest, his "family business," including asking him legal questions after he completed law school. However, Midwest never retained Rappa in any capacity, nor did Midwest pay Rappa for any legal advice.

¶ 29    Vincent David Rappa averred that SFNR served as Midwest's legal counsel from 2001 until late 2015. He never sent Rappa any communication or documents related to Midwest's reorganization prior to SFNR's completing the reorganization and informed Rappa for the first time on September 22, 2015. Rappa was not asked to review or approve any of the documents SFNR prepared. Between August 6, 2015, and September 14, 2015, Vincent David Rappa communicated with his son only twice by telephone and fewer than 30 times by e-mail, and none of those conversations involved the reorganization. He averred that "[i]t was only after the Re-domiciliation, when Neopost sent the termination letter, that I communicated with [Rappa] regarding the Re-domiciliation. Only then did I began [*sic*] consulting [Rappa] regarding fixing the harm caused by Defendants' negligence."

¶ 30    In response to the motions to dismiss, SFNR claimed that it had alleged sufficient facts to establish that the same "injury" was involved in both Midwest's complaint and in its third-party complaint and that the court had personal jurisdiction over Rappa.

¶ 31    On October 4, 2019, the trial court entered an order granting M&G's motion to dismiss, with prejudice, finding that SFNR had not sufficiently alleged facts showing that M&G contributed to the " 'same injury' " that was caused by SFNR, nor had it alleged that M&G would be liable to Midwest. The court found that, in its complaint, Midwest alleged that SFNR committed legal malpractice regarding its advice to redomicile the corporation (obviously, the alleged malpractice was SFNR's failure to obtain the consent of Neopost for the reorganization). However, Neopost had already sent its termination notice and filed suit in New

York prior to Midwest's retaining M&G as counsel, so "the harm had already been done by the time Midwest decided to pursue new counsel." The court also found that "SFNR's claims as former lawyers against M&G, successor lawyers, that they could have achieved a better resolution of the problem they created is a hollow claim unsupported by the facts or evidence." Accordingly, the court found that SFNR had failed to state a cause of action for contribution against M&G.

¶ 32    On December 6, 2019, the trial court entered an order granting Rappa's motion to dismiss, with prejudice, finding that SFNR had not alleged sufficient facts to establish that Rappa had engaged in activity that would submit him to the court's jurisdiction. The court first determined that it did not have general jurisdiction over Rappa, as SFNR had failed to allege any facts showing the permanence and continuity necessary for general jurisdiction. Additionally, the court found that it did not have specific jurisdiction over Rappa. The court found that the only " 'injury' " alleged in the third-party complaint was a result of the settlement agreement between Midwest and Neopost, in which Rappa took no part. The court further found that Rappa's contacts with his parents did not establish an attorney-client relationship with Midwest or demonstrate that Rappa gave legal advice regarding the conflicts between Midwest and Neopost. Accordingly, the court found that it lacked personal jurisdiction over Rappa and dismissed the claims against him.

¶ 33    On April 24, 2020, the trial court entered an order finding that the October 4, 2019, order dismissing M&G and the December 6, 2019, order dismissing Rappa both constituted final judgments as to SFNR's third-party complaint and that there was no just reason for delaying either enforcement, appeal, or both. SFNR filed a timely notice of appeal, and this appeal follows.

¶ 34                                                    ANALYSIS

¶ 35          On appeal, SFNR claims that the trial court erred in dismissing its third-party complaint

because it contends that it sufficiently alleged (1) that the injury alleged in its third-party

complaint was the same as the injury alleged in Midwest's complaint and (2) that the trial court

had personal jurisdiction over Rappa. We discuss each argument in turn.

¶ 36                                      I. "Same Injury" Requirement

¶ 37          SFNR first contends that the trial court erred in its finding that SFNR could not state a

cause of action for contribution and the dismissal of the complaint as to M&G under section

2-615 of the Code. A motion to dismiss under section 2-615 challenges the legal sufficiency

of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440

(2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The critical inquiry is whether the

allegations in the complaint are sufficient to state a cause of action upon which relief may be

granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in

the complaint and all reasonable inferences that may be drawn from those facts are taken as

true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the

light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441. We review *de novo* an order

granting a section 2-615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at

228. *De novo* consideration means we perform the same analysis that a trial judge would

perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). We may affirm on

any basis appearing in the record, whether or not the trial court relied on that basis or its

reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 38          Under the Joint Tortfeasor Contribution Act (Contribution Act), "where 2 or more persons

are subject to liability in tort arising out of the same injury to person or property," there is a

right to contribution among them. 740 ILCS 100/2(a) (West 2018). Thus, in order for SFNR to have properly alleged a cause of action under the Contribution Act, SFNR and M&G (1) must both be subject to liability in tort and (2) their liability must arise out of the same injury. *People v. Brockman*, 148 Ill. 2d 260, 268 (1992). The issue in the case at bar is whether SFNR's third-party complaint alleged that M&G was subject to liability for the same injury as the injury that Midwest alleged SFNR caused in its complaint.

¶ 39        SFNR claims that Midwest identified two injuries in its complaint: (1) the "Litigation-Expense Injury," which was the attorney fees incurred by Midwest in the New York litigation,[4] and (2) the "Relinquishment Injury," which was the damages that Midwest incurred in relinquishing its contractual rights in its claims against Neopost in the Illinois litigation and its counterclaims against Neopost in the New York litigation. It is this second "injury" that SFNR claims is identical to the injury alleged in its third-party complaint. However, more accurately, Midwest's complaint alleged that:

> "50. Defendants' advice and counsel caused Neopost to send Plaintiff the Termination Notice and file the SDNY Action, and Plaintiff was damaged thereby.
>
> 51. Defendants' advice and counsel caused Plaintiff to relinquish its contractual rights and claims and incur substantial attorneys' fees and other costs including but not limited to the costs to defend the SDNY Action, and Plaintiff was damaged thereby."

Thus, Midwest alleged that it was *injured* when Neopost sent Midwest a termination letter and initiated the New York litigation, resulting in damages to Midwest in attorney fees and in the relinquishment of its contractual rights.

___

[4]SFNR does not seek contribution for this "injury."

¶ 40      Our supreme court has explained that "[t]he injury in a legal malpractice action is not a personal injury [citation], nor is it the attorney's negligent act itself [citation]. Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Thus, for purposes of a legal malpractice lawsuit, a client is not considered to be injured until he has suffered a loss for which he may seek monetary damages, and the fact that an attorney may have breached a duty of care is not, in itself, sufficient to sustain a cause of action. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306. "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. [Citation.] The existence of actual damages is therefore essential to a viable cause of action for legal malpractice. [Citation.]" *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306-07.

¶ 41      SFNR's argument, then, is that Midwest did not incur damages—and, therefore, was not injured—until it was forced to compromise its contractual rights by settling with Neopost. We do not find this argument persuasive. The dealership agreement provided that Neopost could terminate the agreement in the event of Midwest's "unauthorized sale, assignment, transfer, pledge or encumbrance of rights of obligations under" the agreement or in the case of the "abandonment of [Midwest's] business, or inability or refusal to conduct business under" the agreement. Midwest's injury occurred when SFNR failed to obtain Neopost's approval before assigning its rights to the new Illinois corporation and caused Neopost to terminate the dealership agreement. Neopost initiated the termination of the dealership agreement through its notice of September 21, 2015, and stated within the notice itself that such termination was to be effective October 26, 2015, anticipating that the process would take approximately 30

days. It also filed a declaratory judgment lawsuit in New York, seeking confirmation of its right to terminate the dealership agreement. Thus, as of September 2015, Midwest suffered injury because Neopost had already terminated the dealership agreement. Moreover, despite SFNR's contention to the contrary, Midwest incurred pecuniary harm immediately, when it received the termination notice. This is not a case in which the existence of damages is speculative; at most, the only uncertainty was the extent of those damages. See *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307 ("Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined."). Accordingly, we agree with the trial court that the "injury" at issue in Midwest's complaint is the injury that was incurred when Neopost terminated the dealership agreement. Whether Midwest's damages were removed by the later actions of SFNR was not considered by the trial court, and thus, we are not considering them here. That issue is not relevant to the issue before us and is a defense that SFNR will use in the underlying lawsuit.

¶ 42    It is undisputed that M&G was not involved in the reorganization process that led to Neopost's termination of the dealership agreement and that it only became involved in the litigation later, when it was retained to defend Midwest in the New York litigation.[5] Consequently, by the time that M&G became involved, Midwest had already been injured, and M&G's actions therefore cannot be considered to have caused that injury. SFNR's attempts to show that M&G's conduct increased or aggravated the extent of Midwest's damages do not change the fact that the injury itself was not caused by M&G. Accordingly, since SFNR's

---

[5]We also note that, while SFNR had previously alleged that Rappa was involved in the reorganization, its second amended third-party complaint abandoned that allegation.

complaint did not allege the same injury as the injury alleged in Midwest's complaint, the trial court properly dismissed SFNR's complaint for failure to state a cause of action.

¶ 43                                II. Personal Jurisdiction Over Rappa

¶ 44        We next consider SFNR's claims against Rappa. As noted, Rappa filed a motion pursuant to section 2-301 of the Code, contesting the trial court's jurisdiction over him. Section 2-301 permits a party, prior to the filing of any other pleading or motion, to "object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process." 735 ILCS 5/2-301(a) (West 2018). Section 2-301 further provides that, "[u]nless the facts that constitute the basis for the objection are apparent from papers already on file in the case, the motion must be supported by an affidavit setting forth those facts." 735 ILCS 5/2-301(a) (West 2018).

¶ 45        In the case at bar, Rappa filed a motion claiming that the trial court lacked jurisdiction over him and attached his affidavit, as well as the affidavit of his father, one of Midwest's owners. Both affidavits established that Rappa was not involved in the reorganization process and that he did not discuss any aspect of the conflict between Midwest and Neopost until after Neopost sent its termination notice. Based on the facts contained in the pleadings and attached to the motion, the trial court found that it did not have personal jurisdiction over Rappa, a Virginia resident.

¶ 46        A plaintiff has the burden of establishing a *prima facie* case for exercising jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28; *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 949-50 (2007). When, as here, the trial court decides

the issue of personal jurisdiction solely on documentary evidence and without an evidentiary hearing, our review is *de novo*. *Russell*, 2013 IL 113909, ¶ 28; *Bolger*, 369 Ill. App. 3d at 950. As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62. We resolve any conflicts among the documents in the plaintiff's favor for purposes of determining whether the plaintiff established a *prima facie* case. *Bolger*, 369 Ill. App. 3d at 950. However, a defendant may overcome a plaintiff's *prima facie* case of jurisdiction if he or she presents uncontroverted evidence defeating jurisdiction. *Russell*, 2013 IL 113909, ¶ 28; *Bolger*, 369 Ill. App. 3d at 950.

¶ 47        Section 2-209 of the Code (735 ILCS 5/2-209 (West 2018)), commonly referred to as the Illinois long-arm statute, governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant. *Russell*, 2013 IL 113909, ¶ 29. In the case at bar, SFNR argues that Illinois courts have personal jurisdiction over Rappa because he has submitted to jurisdiction by engaging in acts enumerated under subsection (a), which provides, in relevant part:

> "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> ***
>
> (2) The commission of a tortious act within this State[.]" 735 ILCS 5/2-209(a)(2) (West 2018).

¶ 48        Moreover, due process requires that a nonresident defendant have certain minimum contacts with the forum state " 'such that maintenance of the suit there does not offend

"traditional notions of fair play and substantial justice." ' " *Russell*, 2013 IL 113909, ¶ 34 (quoting *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150 (1988), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 18. This " 'minimum contacts' test" is the threshold issue in any personal jurisdiction challenge in Illinois. *Russell*, 2013 IL 113909, ¶ 36. In turn, "the relevant inquiry into whether the minimum contacts test has been satisfied depends on what category of personal jurisdiction is being sought—either general or specific." *Russell*, 2013 IL 113909, ¶ 36 (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 613 (2005)). Here, SFNR contends that the trial court had specific jurisdiction over Rappa.

¶ 49    "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *Rios*, 2020 IL 125050, ¶ 20. Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain single or occasional acts in the state, but only with respect to matters related to those acts. *Russell*, 2013 IL 113909, ¶ 40. "An Illinois court may assert specific jurisdiction over a nonresident defendant if: (1) the defendant had minimum contacts with Illinois such that it was fairly warned that it may be haled into an Illinois court; (2) the action arose out of or was related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois." *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 14 (citing *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1081 (2010)).

¶ 50    In the case at bar, SFNR claims that Rappa's contacts with Illinois were sufficient to confer jurisdiction, claiming that the third-party complaint alleged that Rappa provided legal advice

to Midwest concerning its dealings with Neopost. However, SFNR does not support these conclusory allegations by showing what Rappa's advice consisted of, or how Rappa was involved in the proceedings. Moreover, Rappa points out that he was never retained by Midwest, that there was no attorney-client relationship at the time alleged, that the individuals he was speaking to were his parents, and that he never received compensation for any advice given to his parents. We also note that Midwest retained M&G—a law firm—to represent it in its litigation against Neopost and that Rappa was not listed as counsel.

¶ 51   Furthermore, the fatal flaw in SFNR's jurisdictional argument comes from the requirement that the cause of action arise from Rappa's contacts with Illinois. SFNR's lawsuit against Rappa is not merely a legal malpractice lawsuit based on his advice with respect to the conflict between Midwest and Neopost. Instead, the "cause of action" at issue in the case at bar is SFNR's third-party complaint for contribution. Thus, the contacts that would permit jurisdiction over Rappa would be the contacts that gave rise to the contribution cause of action. However, as explained above, a contribution lawsuit requires that the injury alleged in the contribution claim be the same as the injury alleged in the underlying lawsuit. In the case at bar, we have concluded that the injury that is alleged in SFNR's third-party complaint is *not* the same injury that is alleged in Midwest's complaint, meaning that Rappa's conduct did not give rise to SFNR's cause of action for contribution. Midwest retained SFNR as its lawyers and it is uncontroverted that SFNR provided the advice to reorganize the company without obtaining Neopost's consent. SFNR never alleged that Rappa was involved in that decision-making process other than to approve it. Thus, leaving aside any argument as to the extent of Rappa's contacts with Illinois, there is simply no way that any of his conduct gave rise to a contribution cause of action because such a cause of action does not exist based on the

allegations of the third-party complaint. See *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 60 (2001) (a court may make a preliminary inquiry into whether the complaint states a cause of action against a defendant who contests jurisdiction); *Zeunert v. Quail Ridge Partnership*, 102 Ill. App. 3d 603, 608 (1981) (same); *Wiedemann v. Cunard Line Ltd.*, 63 Ill. App. 3d 1023, 1030 (1978) (same). Consequently, the trial court properly dismissed the third-party complaint against Rappa based on a lack of personal jurisdiction.

¶ 52                                    CONCLUSION

¶ 53       For the reasons set forth above, the trial court properly granted the third-party defendants' motions to dismiss. M&G's motion to dismiss was properly granted because SFNR's third-party complaint did not allege that M&G's conduct caused the same injury as alleged in Midwest's complaint. Additionally, Rappa's motion to dismiss was properly granted because his contacts with the state could not have given rise to SFNR's cause of action for contribution, as that cause of action did not exist based on the allegations of SFNR's third-party complaint.

¶ 54       Affirmed.

**No. 1-20-0669**

| | |
|---|---|
| **Cite as:** | *Midwest Mailing & Shipping Systems, Inc. v. Schoenberg, Finkel, Newman & Rosenberg, LLC*, 2021 IL App (1st) 200669 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-002513; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Elizabeth M. Bartolucci, of Bartolucci Law, LLC, and Daniel B. Meyer and Edward C. Eberspacher IV, of Meyer Law Group LLC, both of Chicago, for appellants. |
| **Attorneys for Appellee:** | Chris S. Wunder and Eric D. Kaplan, of Kaplan Papadakis & Gournis, P.C., and Eli J. Kay-Oliphant, of Sparacino PLLC, both of Chicago, for appellees. |