2023 IL App (1st) 220562-U
Order filed: January 26, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0562

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MIDWEST MAILING & SHIPPING SYSTEMS, INC., a Wisconsin corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 L 2513 |
| SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, an Illinois limited liability company, ROBERT C. GOLDBERG, and LEONARD J. GAMBINO, | ) ) ) ) | Honorable Daniel J. Kubasiak, Judge, presiding. |
| Defendants | ) ) | |
| (Robert C. Goldberg, | ) ) | |
| Defendant-Appellant). | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Judgment entered against defendant-appellant following a jury trial is affirmed, where the evidentiary issue presented on appeal was not raised in a posttrial motion and the admission of purportedly improper evidence at trial was not shown to be prejudicial.

¶ 2    Defendant-appellant, Robert C. Goldberg, appeals from the $700,000 judgment entered against him following a jury trial in this legal malpractice lawsuit. Goldberg contends that the trial court improperly admitted evidence at trial from the damages expert of plaintiff-appellee, Midwest

Mailing & Shipping Systems, Inc., a Wisconsin corporation (Midwest). Because Goldberg failed to file a posttrial motion raising this issue and as the admission of the purportedly improper evidence was not shown to be prejudicial, we affirm.

¶ 3     This matter has a lengthy procedural history, some of which was set out in a prior opinion entered by this court affirming the dismissal of a third-party complaint for contribution. See *Midwest Mailing & Shipping Systems, Inc. v. Schoenberg, Finkel, Newman & Rosenberg, LLC*, 2021 IL App (1st) 200669. We therefore restate only those facts necessary to resolve this appeal, with portions taken from our prior opinion.

¶ 4     On March 9, 2017, Midwest filed this legal malpractice complaint against defendants, the law firm of Schoenberg, Finkel, Newman & Rosenberg, an Illinois limited liability company, and two of its attorneys, Goldberg, and Leonard J. Gambino. In its complaint, Midwest alleged that it is a Wisconsin corporation, doing business in Illinois and with a principal place of business in Bloomington, Illinois, and is engaged in the business of selling, leasing, installing, and servicing postage meters. In 1996, Midwest and F.M.E. Corporation, doing business as Neopost, entered into a dealership agreement, providing that Midwest would be Neopost's exclusive dealer to sell, lease, install, and service certain of its products, including postal meters and registers, in certain geographic territories. Midwest retained defendants, in part, to represent it in disputes Midwest had with Neopost concerning the dealership agreement over the years. Specifically, in 2002, defendants represented Midwest in litigation alleging that Neopost was in breach of the dealership agreement, which was resolved pursuant to a settlement agreement in 2004.

¶ 5     In 2015, Midwest retained defendants to prepare a lawsuit against Neopost once again, due to Neopost's alleged breaches of the dealership agreement and the 2004 settlement agreement. At approximately the same time, defendants were also providing Midwest with legal advice regarding

a potential corporate reorganization. Specifically, defendants allegedly advised Midwest to incorporate a new entity in Illinois, assign Midwest's business to the new Illinois entity, and terminate Midwest's incorporation in Wisconsin. However, the dealership agreement provided that Neopost could terminate that agreement in the event that Midwest made an unauthorized assignment of its rights under the dealership agreement or in the event that Midwest abandoned its business. Midwest alleged that the dealership agreement was the basis for Midwest's ability to sell Neopost products, which accounted for most of Midwest's business and, as such, termination of the dealership agreement would "devastate and potentially destroy" Midwest's business.

¶ 6 Midwest allegedly asked defendants if the corporate reorganization would negatively impact its position in its litigation against Neopost. Defendants advised that the reorganization would not have an adverse impact. Midwest then agreed to move forward with the reorganization. On August 14, 2015, defendants filed a request with the Illinois Secretary of State, asking it to withdraw Midwest's authorization to do business in the state of Illinois, and formed a new Illinois corporation with the same legal name. On August 21, 2015, defendants filed a complaint on behalf of Midwest against Neopost. On August 25, 2015, Midwest assigned all its rights and obligations under the dealership agreement to the new Illinois corporation. Finally, on September 14, 2015, defendants filed Midwest's dissolution with the Wisconsin Department of Financial Institutions

¶ 7 On September 21, 2015, Neopost sent Midwest a termination notice, informing Midwest that Neopost sought to terminate the dealership agreement based on Midwest's reorganization. The termination notice provided that Neopost had the right to terminate the dealership agreement because Midwest abandoned its right to do business in Illinois and assigned its rights and obligations under the dealership agreement to the new corporation. On September 24, 2015, Neopost filed a declaratory judgment lawsuit against Midwest in the United States District Court

for the Southern District of New York, seeking a declaration that Neopost could properly terminate the dealership agreement because of Midwest's failure to obtain prior approval for Midwest's corporate reorganization.

¶ 8    On September 25, 2015, four days after Neopost sent the termination notice and one day after the filing of Neopost's lawsuit, defendants filed a revocation of voluntary dissolution of Midwest with the Wisconsin Department of Financial Institutions. On October 12, 2015, defendants filed an application to the Illinois Secretary of State for Midwest to be reinstated as a foreign corporation with the authority to do business in Illinois. Finally, on October 20, 2015, the new corporation assigned all its rights and obligations under the dealership agreement back to Midwest, with the assignment being made effective as of August 25, 2015.

¶ 9    Midwest's complaint alleged that Neopost's lawsuit "threatened to destroy" Midwest's business and that, soon after Midwest realized that defendants' advice was the basis for the termination notice and the lawsuit, Midwest's relationship with defendants became adversarial. Midwest alleged that defendants "began pressuring" Midwest to settle its disputes with Neopost in order to protect defendants from liability, rather than acting in Midwest's best interests. Midwest therefore sought and retained new counsel.

¶ 10    Midwest and Neopost subsequently resolved their differences, with each party dismissing its lawsuit against the other—Midwest dismissed its Illinois lawsuit, while Neopost dismissed its New York lawsuit. Midwest also, *inter alia*, relinquished its "Territorial Exclusivity Right" to sell Neopost products under the dealership agreement in exchange for the payment of $300,000. Midwest alleged that, but-for defendants' advice, Midwest "would not have had to compromise its contractual rights and claims" and would not have incurred substantial attorney fees in responding

to the New York litigation. Midwest's complaint therefore sought to recover damages for legal negligence (count I) and breach of fiduciary duty (count II).

¶ 11 In response to this lawsuit, defendants denied the material allegations of Midwest's complaint. Defendants also filed a third-party complaint for contribution against Midwest's new counsel, the law firm of Massey & Gail, LLP, attorney Eli Kay-Oliphant, and attorney Ryan Rappa, the son of Midwest's owners and the "outside general counsel to Midwest." Therein defendants alleged that the third-party defendants had contributed to any injury sustained by Midwest. The complaint for contribution was dismissed with prejudice in late 2019, and defendants filed a timely interlocutory appeal. The dismissal of the third-party complaint was affirmed by this court in an opinion entered in March 2021. *Midwest Mailing*, 2021 IL App (1st) 200669.

¶ 12 Thereafter, defendants filed a motion for summary judgment which, in part, asserted that it was entitled to partial summary judgment on count I because Midwest had produced no evidence to support its contention that, but-for the alleged legal malpractice, Midwest would not have had to compromise its contractual rights and claims. Defendants contended that therefore "Midwest cannot prove that [defendants'] purported malpractice proximately caused Midwest to incur any damages other than litigation attorney's fees."

¶ 13 In support of this argument, defendants noted that as part of its settlement with Neopost, Midwest relinquished its "Territorial Exclusivity Right" to sell Neopost products under the dealership agreement in exchange for the payment of $300,000. Defendants also noted that Midwest's damages expert, Christopher Alexander, had indicated in both a written report and in his deposition testimony that but-for defendants' legal malpractice, Midwest would have been willing to accept, and Neopost would have been willing to pay, $2.73 million in exchange for Midwest's relinquishment of its exclusive right to sell Neopost products in certain territories under

the dealership agreement. Defendants contended that it was entitled to partial summary judgment because there was simply no evidence to support Alexander's expert opinion. The trial court denied defendants' motion for summary judgment in its entirety.

¶ 14 Subsequently, defendants filed a motion *in limine* seeking to bar Alexander from testifying at trial regarding his opinions as to Midwest's damages. The trial court denied that motion and the matter proceeded to a jury trial. Defendants unsuccessfully objected both before and after Alexander's testimony at trial.

¶ 15 Following the presentation of Midwest's evidence, the trial court entered a directed verdict in favor of defendants on count II of the complaint. Thereafter, after defendants presented their evidence, the jury found in favor of the other two defendants on count I, but against Goldberg and in favor of Midwest on that count. The jury awarded Midwest $700,000 in damages and a judgment against Goldberg in that amount was entered on March 21, 2022. Goldberg did not file a posttrial motion, but he did file a timely notice of appeal on April 20, 2022.

¶ 16 On appeal, Goldberg solely contends that the trial court "abused its discretion by admitting into evidence the opinions and testimony of Alexander, where such opinions were based upon guess, speculation and conjecture." However, as the record clearly reflects and as Midwest correctly notes in its brief, Goldberg never filed a posttrial motion raising this or any other issue prior to filing his notice of appeal.

¶ 17 Section 2–1202 of the Illinois Code of Civil Procedure (Code) sets out strict rules for filing posttrial motions in jury trials. 735 ILCS 5/2-1202 (West 2020). Section 2-1202(b) states that "[r]elief desired after trial in jury cases, heretofore sought by reserved motions for directed verdict or motions for judgment notwithstanding the verdict, in arrest of judgment or for new trial, *must* be brought in a single post-trial motion." (Emphasis added.) 735 ILCS 5/2-1202(b) (West 2020).

Section 2-1202(e) of the Code specifies what happens if a party in a jury case fails to file a posttrial motion, stating that "[a]ny party who fails to seek a new trial in his or her post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict." 735 ILCS 5/2-1202(e) (2020).

¶ 18 The Code treats nonjury cases very differently. Section 2-1203(a), governing the filing of posttrial motions in nonjury cases, states that a party "may" file a posttrial motion within 30 days after entry of judgment. 735 ILCS 5/2-1203(a) (2020). Section 2-1203 does not specify what should be included in posttrial motions and says nothing about forfeiture or waiver. *Id*. "Thus, the plain language of the Code and its separate sections for jury and nonjury cases indicate that the legislature intended different requirements and results for jury and nonjury cases, with the failure to file a posttrial motion resulting in waiver in jury cases but not in nonjury cases." *Arient v. Shaik,* 2015 IL App (1st) 133969, ¶ 28.

¶ 19 The same result is directed by Illinois Supreme Court Rule 366, which states in relevant part that, in jury cases, "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994). Case law is consistent with the clear language of both the Code and the Rule; the failure to file a posttrial motion in a jury case consistently results in forfeiture of all arguments on appeal. *Arient,* 2015 IL App (1st) 133969, ¶ 34 (and cases cited therein). As such, Goldberg forfeited any issue on appeal when he failed to file a posttrial motion following the jury verdict.

¶ 20 In reaching this conclusion, we reject two contrary arguments raised by Goldberg on appeal. First, we reject Goldberg's contention that he did not need to file a posttrial motion to preserve the issue raised on appeal because this issue was raised in defendants' motion for summary judgment and section 2-1202 of the Code "does not require a party to file a post-judgment

motion to preserve for appeal a circuit court's ruling on summary judgment." However, here the trial court *denied* the motion for summary judgment, and it is axiomatic that "[w]hen a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial. [Citations.] The rationale for this rule is that review of the denial order would be unjust to the prevailing party, who obtained a judgment after a more complete presentation of the evidence." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355 (2002). The cases Goldberg cites on appeal in support of this argument are thus inapposite, where there the reviewing courts only reached issues not raised in posttrial motions where those issues were decided in orders *granting* partial summary judgment prior to trial. See *Mohn v. Posegate*, 184 Ill. 2d 540, 546 (1998); *Mount Zion State Bank & Trust v. Central Illinois Annual Conference of United Methodist Church*, 198 Ill. App. 3d 881, 889 (1990).

¶ 21    We also reject Goldberg's argument that section 2-1202 "does not apply to a circuit court's rulings as to the admission of expert testimony." In support of this contention, Goldberg cites to *Wartalski v. JSB Construction & Consulting Co.*, 384 Ill. App. 3d 139, 145-46 (2008), where the appellate court reviewed the trial court's decision to allow the admission of expert opinions without first conducting a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), even though no posttrial motion raising the issue was ever filed.

¶ 22    First of all, the parties in that case framed the issue as one of the appellate court's jurisdiction to review the issue, rather than as an issue of forfeiture. *Id*. Second, while the decision in *Wartalski* discussed section 2-1202 of the Code, it did not discuss the forfeiture mandated by Rule 366. Finally, *Wartalski* appears to be an outlier decision, as we have found no cases favorably citing it for the proposition that section 2-1202 "does not apply to a circuit court's rulings as to the

admission of expert testimony." In contrast, numerous cases have specifically found issues regarding the admission of expert testimony to be forfeited on appeal where they were not raised in a posttrial motion. *Lopez v. Northwest Memorial Hospital*, 375 Ill. App. 3d 637, 650 (2007); *Cohan v. Garretson*, 282 Ill. App. 3d 248, 260 (1996); *Dep't of Public Works & Buildings v. Todaro*, 90 Ill. App. 2d 245, 249 (1967). For all these reasons, we decline to follow the decision in *Wartalski* rather than the clear weight of authority cited above, and we therefore conclude that Goldberg forfeited any argument on appeal as to the admission of Alexander's testimony by failing to file a posttrial motion raising the issue.

¶ 23 Even if we were to overlook Goldberg's forfeiture of this issue, consider it on the merits, and assume that the admission of Alexander's testimony at trial was improper, we would still not grant Goldberg any relief on appeal. Reversal on appeal is not required unless an erroneous evidentiary ruling was substantially prejudicial, and the burden of establishing prejudice is on the party seeking reversal. *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40. As such, any improper evidentiary rulings may be considered harmless error. *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 784 (2006). In other words, the judgment will not be reversed if "no harm has been done." *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471 (1991). Where it appears an error did not affect the outcome of the trial, or where the reviewing court can see from the entire record that the error did not result in substantial prejudice, the judgment will not be disturbed. *Cairns v. Hansen*, 170 Ill. App. 3d 505, 511 (1988).

¶ 24 Furthermore, the amount of a verdict is generally at the discretion of the jury and is not subject to precise calculation. *Velarde v. Illinois Central R.R. Co.*, 354 Ill. App. 3d 523, 540 (2004). All the law requires is that the evidence presented tends to establish, with a fair degree of probability, a basis for the assessment of damages. *F.L. Walz, Inc. v. Hobart Corp.*, 224 Ill. App.

3d 727, 733-34 (1992). Even where competing experts testify as to damages, a jury is not required to accept one opinion, and its award does not have to be capable of precise determination. *Id*. "In short, damages are the jury's prerogative, not the appellate courts'." *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 764 (1999).

¶ 25    Here, Midwest sought to recover for damages resulting from Goldberg's legal malpractice, which included attorney fees and other damages, including damages resulting from the reduced price of $300,000 it was required to accept for the relinquishment of its "Territorial Exclusivity Right" to sell Neopost products under the dealership agreement. While Alexander testified that but-for Goldberg's malpractice the sale of that right alone would have been worth $2.7 million, it is apparent that the jury did not fully credit that testimony where it only awarded a total of $700,000 in damages. Moreover, Goldberg concedes on appeal that Midwest presented evidence at trial of approximately $400,000 in damages exclusive of any damages resulting from the reduced price Midwest was required to accept for the relinquishment of the territorial exclusivity right. Furthermore, we find that sufficient evidence was presented at trial to support the jury's award of an additional $300,000 in damages related to the relinquishment of the territorial exclusivity right.

¶ 26    For example, the jury was presented with evidence that the sale of Neopost products represented most of Midwest's business, and that it rejected a $1 million offer for the business in 2015. Also in 2015, prior to Goldberg's legal malpractice, Midwest intended to ask Neopost for $5 million in exchange for the relinquishment of the territorial exclusivity right, as part of settlement negotiations with Neopost. Moreover, a Neopost representative testified at trial that it was offering a premium to buy-out the territorial exclusivity rights of dealers such as Midwest prior to Midwest's corporate reorganization and Neopost's delivery of the termination notice. The representative could not rule out the possibility that prior to that time, it would have paid Midwest

as much as $600,000 for the relinquishment of the territorial exclusivity right.

¶ 27    In sum, on this record Midwest has not met its burden to show that any possible error in the introduction of Alexander's testimony at trial was substantially prejudicial. *DiCosolo*, 2011 IL App (1st) 093562, ¶ 40. As such, any possible error in admitting that evidence may be considered harmless error. *Wade*, 364 Ill. App. 3d at 784.

¶ 28    For the foregoing reasons, we affirm the judgement of the circuit court.

¶ 29    Affirmed.